## Watt *v.* Mary A. Mitchell.

When the indorsee of a note takes a mortgage from his principal, as indemnity, he is not entitled to notice of non-payment, although he may have released the mortgage property.

IN ERROR from the circuit court of the county of Adams.

The defendant in error brought her action of assumpsit to the April term, 1840, of the Adams circuit court, against Richmond Bledsoe, the maker, and Watt, Burke & Co. the payees and indorsees of a promissory note for two thousand sixty-six dollars and sixty-five cents, dated March 5th, 1836, and payable three years thereafter.

The declaration contained two special counts, one containing the usual averment of presentment, demand and notice; and the other, the allegation that before the said note became due, viz: on the 18th September, 1837, the said Bledsoe and wife made a deed of mortgage to Watt, Burke & Co., to secure them for their indorsements of certain notes of said Bledsoe, amongst which the note here sued on was included.

Bledsoe filed a plea of payment and the general issue. Watt, Burke & Co. pleaded the general issue; on all of which pleas issue was taken.

At the November term, 1840, a verdict was rendered for the plaintiff below, against Bledsoe and John Watt, a discontinuance having been entered against the other members of the firm of Watt, Burke & Co. At the same term a new trial was granted, on motion of the defendants below.

At the May term, 1841, the cause again came on for trial, when the plaintiff below read in evidence to the jury, without objection, the note sued on; also proof of the protest of the note *the day after* the third day of grace, and notice thereof to the indorsers the same day; and also the record of the deed of mortgage above referred to, with the indorsement thereon of Watt, Burke & Co. of

satisfaction of several of the notes secured therein, and a release of a large amount of the property covered by said mortgage deed; which acknowledgment of satisfaction and release were dated May 30, 1831, and attested by R. North, clerk of the probate court.

The defendant below, John Watt, then offered in evidence a certified copy of the foreclosure of said mortgage by Watt, Burke and Co., in chancery; the decree of the court ordering the same to be sold; the report of the commissioners as the amount due, viz: forty-four thousand six hundred and seventy-two dollars and thirty-nine cents, and the report of the commissioners who sold said property for thirty-seven thousand two hundred dollars—November 25, 1839. To the reading of which record in evidence the plaintiff below objected, which objection was sustained by the court. The defendant, Watt, excepted to the ruling out of this record, and the case comes up on his bill of exceptions.

The object of the defendant in offering the record in evidence, was to prove that the property in the mortgage deed was not sufficient to meet all the indorsements of Watt, Burke & Co. intended to be secured.

Montgomery for plaintiff in error.

It will be seen by the record, that there was not sufficient notice of protest to charge the defendant, Watt. The note matured on the 8th March, 1839; the notice recited a protest on the 9th. To supply this defect, the plaintiffs rely on the position that defendant was indemnified, and therefore not injured by want of notice; and, to establish this position, produced in evidence a mortgage from R. Bledsoe to Watt, Burke & Co., to indemnify them as indorsers of a number of notes, among which the note sued on is found. This mortgage is strictly a security for indemnity. No claim can be made under it until the mortgagees have been compelled to pay the money on the notes mentioned. Before the maturity of the note sued on, the mortgagees released the mortgage, or a large amount of the property included in it, and afterwards a bill was filed to foreclose, on account of the mortgagees having to pay several of the notes. The defendant, offered to introduce the proceeding in the case for foreclosure, to show that the indemnity was inadequate; that the value of the property did not cover the

Watt *v.* Mary A. Mitchell.

loss previously sustained, and that nothing was left to indemnify them the loss sustained on this note, if they were held liable.

Bledsoe indemnified Watt, Burke & Co. as indorsers of the note sued on, and several others. The mortgage was foreclosed and sold for much less than the amount of precedent claims. The note was protested a day too late. See Bond *v.* Farnham, 5 Mass. Rep. 170.

The case in 5 Mass. Rep. the court lay some stress on the circumstance that the indorsee had received all assignment of *all* the maker's property as indemnity, which is considered an implied agreement to pay the debt. The case is decided on the analogy of the case of a drawer of a bill who has no funds in the hands of drawee.

The case of insolvency of the maker at the time of indorsement, and continuing insolvent until the maturity of the note, is good reason for neglecting to give the indorser notice, if the indorsee knew such insolvency. But the insolvency of the maker happening after indorsement, does not furnish an excuse for failing to give notice. 7 Mass. R. 207.

It would seem but reasonable, from analogy to the nice distinction in this latter case, that if the indorser was only partially secured, and the maker, at the maturity of the note, had other property, that demand and notice were necessary to charge the indorser, ☞ prove that Bledsoe, about the time of the maturity of the note, paid some demands against him, or had the means of paying the note.

Attending a meeting of the creditors of a bankrupt, and assuming the quality of creditor for the amount of note on which he was indorser, will not be construed a waiver of demand and notice. 6 Louisiana R. 730; 6 Wend. R. 658.

The fact of an accommodation indorser taking a mortgage from the maker of a note to indemnify him, does not dispense with due diligence and notice. 9 Louisiana R. 335.

It was contended, and the court below held, that the defendants having once had sufficient indemnity, were liable as indorsers of the note, without notice, or demand of payment, although they had released the mortgage before maturity of the note, and therefore had no indemnity when the note matured. It is difficult to con-

12*

ceive on what ground the indorser can be held liable without no-
tice or demand, unless he is indemnified at the time he ought to
receive notice.   The object of giving him prompt notice is, to en-
able him to procure indemnity, which it is presumed he would not
ask, if he had not some information that he would be held respon-
sible for the money; and the neglect to give notice is only excused
because the indorser has already possessed himself of all the advan-
tages he could obtain if he had been notified.   The circumstance
that the party once had sufficient security, and released it, cannot
excuse notice; for the same confidence that induces a man to in-
dorse without security in the first instance, may induce him to re-
lease a security afterwards; and the very object of the release
may be to enable the maker, by sale of the property, *to* raise the
means of payment.

The cases on the subject of the effect of an indemnity previous
*to maturity of the note* are somewhat scarce; but from the general
current of those we find, it would appear to be the rule, that when
the party was fully indemnified, or had received all the indemnity
the maker was able to give, that he would be liable without de-
mand and notice.   The case in 5 Mass. Rep. 170, places the indor-
ser's liability, in case of indemnity to the full extent of the maker's
means, (although inadequate,) upon the ground of a presumed un-
dertaking on the part of the indorser to provide for the note.   In
that case, the maker's insolvency was shown, which circumstance
is adverted to by the court, in connection with the circumstance of
the maker having assigned all his effects to the indorser, as full evi-
dence that the indorser was not injured by the holder's neglecting
to demand payment of the note at maturity, and of the undertak-
ing on his part to pay the note.   5 Mass. Rep. 170.

It was decided in Louisiana, that "it is not to be presumed that
an indorser intended to waive a demand on the drawer, and notice
to himself, because he attended a meeting of the creditors before
maturity of the note, and assumed the character of a creditor for
that note." 6 Louis. Rep. 744.

That was a stronger case than the one now before the court.
The maker had surrendered all his effects, and claimed the benefit
of the bankrupt laws of Louisiana, the effect of which would be
to discharge him absolutely from all his previous liabilities, and

Watt *v.* Mary A. Mitchell.

subject his effects to a pro rata distribution among his creditors. The indorser, by claiming to be a creditor on account of his position as indorser, was availing himself of all the benefits he could receive if he had been duly notified, yet the court held he was entitled to notice. Ibid. Same point, 6 Wend. 658.

The case in 7 Wend. is a case of full indemnity, and is decided on the ground that the party had obtained all the benefit he could have been entitled to, if he had had notice, and was not injured by the laches. 7 Wend. 165. All the cases in the following authorities are of the same cast. 2 Greenleaf 207; 1 Sergeant and Rawle, 334.

Boyd, on the same side.

Mandeville, for defendants.

There are two questions in this case:

First, whether an indorser, who has taken security of the maker, against his indorsement, can set up an eventual deficiency of such security in bar of his liability.

Second, whether an indorser, who having taken security from the maker against his indorsement, releases a portion of such security before the note matures, does not thereby fix his liability at all events.

First. The principal authorities on this subject are the following:—Corney *v.* Mendez Da Costa, 1 Esp. 302; Brown *v.* Maffey, 15 East, 222, '3; Bond *v.* Farnam, 5 Mass. 170; Tower *v.* Durell, 9 Mass. 332; Barton *v.* Baker, 1 Serg. & R. Rep. 334; Mead *v.* Small, 2 Green. Rep. 207; Mechanic's Bank *v.* Griswold, 7 Wend. Rep; 165; 5 Conn. Rep. 175, 1st series; 4 Conn. Rep. 124; Bailey on Bills, Am. ed. 152–3, 303, 231–2, 241–2.

It is contended that these cases establish the indorser's liability, without notice, only in two events: first, where the indorser takes an assignment of all the effects of the maker for his security: Second, where the indorser takes sufficient security from the maker. In these cases it is admitted that demand and notice are unnecessary to bind the indorser. I do not find any case where a question has been made of the security having turned out to be insufficient to meet the indorsement. But is it clearly covered by

the principle of the above cited cases. The principle is clearly and accurately laid down by C. J. Parsons, in Bond *v.* Farnam, 5 Mass. 170.

In Bond *v.* Farnam the court say, "we do not mean to be understood that when an indorser receives security to meet particular indorsements, it is to be considered that he waives a demand or notice as to any other indorsements. That, however, is not this case. But we are of opinion that if he will apply to the maker, and representing himself liable for the payment of any particular indorsements, receives a security to meet them, he shall not afterwards insist on a fruitless demand upon the maker, or on a useless notice to himself, to avoid payment of demands, which on receiving security he has undertaken to pay." In the third edition of the Mass. Reports there is appended a note, with references to authorities, questioning the correctness of this decision. I have referred to the cases cited in the note, and find that they all refer to the well settled law that the insolvency of the maker does not relieve the holder from due diligence, or that an accommodation indorser of a note is not to be treated as the drawer without funds of a bill of exchange. The authority of Bond *v.* Farnam was acknowledged in Tower *v.* Durell, 9 Mass. Rep. 332, in Maine, New York, Pennsylvania, and several other states.

When an indorser calls upon the maker for security, he does so with a view to his liability. He admits his liability, because if he did not admit it, he would have no right to demand indemnification. When he receives indemnity, his conditional undertaking becomes absolute. The law dispenses with the requisition of notice, because its object is accomplished. The object of notice is, that the indorser may indemnify himself. But he has, by taking security, anticipated this object by his own foresight. He has anticipated the failure of the maker to pay, and provided for the necessity of payment by himself. Notice would be an act of supererogation; its office is already performed. The law never requires an useless act. Nor will it avail him to say that his security was insufficient. He has taken either all the maker had; or all that he could get; or what he deemed to be sufficient. In either case, what good could a notice do him? If he has taken all the maker had, notice could not enable him to get more. The

Watt *v.* Mary A. Mitchell.

authorities are decisive on this state of the case. If he has got all that he could, notice could not enable him to get more. The same authorities must cover this state of the case. And if he has taken what he deemed to be ample security, he is better off than in either of the other cases; he must abide by his own judgment, and is precluded from taking advantage of his own error. It would certainly be a fraud, (as the court say in 15 East. 222,) to call for more. He has put it out of the maker's power to pay. He has taken from the creditor so much of the maker's property for the payment of the debt. It will not do for the indorser to say that when he got *all*, he did not get enough; nor when he got all he could that he did not get enough; or that what he thought would be enough, has not turned out to be so. If he has got all, or all that he could, notice could put him in no better situation; and if he had power to get more, it is his own fault that he did not completely indemnify himself. It is clear that his liability does not depend on his entire indemnity, or else he would not be bound when having taken all the maker's effects, these turn out to be insufficient. He has a loss to bear in the one case as well as in the other; and therefore the principle of the adjudged cases is not that the indorser is secured from loss, not that he is liable only when he has taken sufficient security, but that by taking security he has rendered himself liable at all events; that he has made his contract absolute by his own act; that he has anticipated, and therefore avoided the necessity of notice. The only plausible objection to the absolute conclusiveness of this reasoning upon the above cited cases may be stated in this way: " The contract of the indorser is conditional at its inception; the conditions are, the refusal of the maker to pay at maturity, on demand, and notice given to the indorser. The security which the indorser takes is against this conditional contract. Is there any reason why his subsequently having taken a security should deprive him of a right to notice to which he was entitled at the time the indorsement was made. From the fact that no notice was given would he not have a right to presume that the note was paid by the maker, and thus be induced to part with his security? To this I answer, first, that it is no novelty in law for a new subsequent ingredient incorporated into a contract, to change its nature, and make that absolute

which was conditional. Second, there are two reasons why the taking of security should dispense with the right to notice. One reason is, that the taking of security from the maker impairs his ability to fulfil his contract, and is therefore a fraud upon the holder, unless the indorser substitutes his responsibility. The other reason is, that the function of the notice is already performed; the indorser has anticipated its object, to the prejudice of the creditor. And, third, the maker would have no right to give up his security for want of notice, for two reasons; one is because he is bound to know the law; and second, because he would not be justified in giving up his security to the maker until the maker had given up his indorsement to be cancelled. If he did so, he would do it in his own wrong.

The case of Corney *v.* Da Costa was decided explicitly upon the ground that the indorser, by taking the maker's effects, made his contract an original and not a collateral undertaking. This is the true principle, and precludes all questions as to the sufficiency of the security. If the contract of the indorser did not become absolute by taking security, whether sufficient or insufficient, that case could not stand, nor the numerous others like it both English and American; because although at the time of taking it might be all that the maker had, it might not be so at the time that the note fell due. In the mean time the maker might fall heir to vast estates; by a thousand accidents might be raised to the pinnacle of fortune. Yet the law does not contemplate this possibility; nor will it contemplate the same possibility in the cases where the indorser takes all the security he could get, or what he considered sufficient at the time. These cover all the possible cases of taking security; they all rest on the same ground, and must be adjudged in the same way. The taking of security therefore, fixes the liability of the indorser without notice.

I may further remark that this fixes the time at which the sufficiency of the security is to be judged of, even if the court should decide that the indorser was liable only when he had taken sufficient security: viz. the time of taking. This consideration will be important in a subsequent part of the argument.

But if the class of cases where the indorser takes all the effects which the maker has at the time of such taking, establishes the

Watt *v.* Mary A. Mitchell.

principle that the indorser's liability without notice is fixed, without regard to the sufficiency of the security at that time; that his contract becomes absolute by the taking of such security, then I claim the benefit of the principle for this case, although the facts of it may not be the same as any of the decided cases.    The principle must govern all cases within its application.    The commercial law of England is a system founded on the application of reason to the exigencies of commercial transactions as they severally arise.    It would never have had an existence if a precedent had been required for each one of the countless cases that have sprung out of men's dealings with each other.

In this case there are two other considerations which commend themselves to the court:

1. The security which the indorsers had taken was spread upon the public records of the country.    By having their mortgage deed recorded, they gave notice to all the world that they had taken security: they gave notice to the holder of the note that they had taken so much of the maker's property out of his controul, and within their own for the payment of the note: that they had anticipated the maker's failure to pay, provided for that event in time, and dispensed with demand and notice.    Might not the holder of the note reasonably say, "these indorsers have either got all the maker's property secured to themselves, or they have got enough of it to indemnify them for paying the note—they have agreed with the maker to take it up?"

2. Notice was given in this case as soon as the law required. Demand of payment was made of the maker on the day after the third day of grace, and notice was served on the indorser the same day.    The demand was too late, but the notice was seasonable.

Second. But even if the rule contended for be correct, that the indorser must take *sufficient* security, there is one feature in this case which is decisive of it.

Bledsoe (the maker) gave Watt, Burke, & Co., (the indorsers) a mortgage of a large amount of real and personal estate, to secure a number of notes specified in the mortgage deed, amongst which is the note sued on by the defendant in error.    Before this note became due several other notes to the amount of some $40,000 were paid, the payment of which Watt, Burke, & Co. acknowledge

Watt *v.* Mary A. Mitchell.

on the record, and with it *a release of a large part of the property mortgaged.* This, surely, *estops* them from alledging that the remaining property is insufficient to meet the remaining indorsements. It is, in effect, their own solemn declaration of record that they have *sufficient* security. If they have not retained sufficient to indemnify them, it is their own fault. They had it in their power. If by relinquishing it they suffer, it is their own voluntary act: they have no hardship—no injustice to complain of. They must stand by their own deed. If it were not so, *others* would suffer injustice: the creditor would be defrauded by *their* wrongful act.

"If a principal has given any securities to his surety, the creditor is entitled to all the benefit of such securities in the hands of the surety, to be applied in payment of his debt." *1 Story Eq. Jur.* 592; 3 Wright *v.* Moreley; *2 John. Ch. R. 418.*

The law carries the principle further, and makes the indorser, who in this respect is treated as a surety, absolutely liable as a principal in the two cases, where he takes all the maker's property, and where he takes sufficient security, if not in the third case (for which I contend) where he takes security which turns out to be insufficient. I ask then confidently if the indorser has not defrauded the creditor (who is entitled to *all the benefit of the securities* which the indorser has taken) by releasing such security: if this is not a stronger case than where he takes all the maker has, although it may not reimburse him five cents in the dollar; if he will be permitted to set up his own wrongful act, in *making* his security inadequate, to release himself from an honest obligation: if, in fine, he has not been the judge in his own case—decided upon the sufficiency of his security—and *estopped* himself from denying that it was sufficient?

But even if this peculiarity would not take this case out of the supposed rule that the security must be sufficient, there is another point upon which the decision of the court below must be affirmed.

This case comes up on a bill of exceptions of the defendant Watt against the decision of the court ruling out the record offered in evidence. That record was offered to prove that the mortgaged property was sold in the month of November 1839, under a decree of foreclosure, and that it did not sell for enough to

cover all the indorsements intended to be secured. Now admitting the indorser to be liable only when he has taken sufficient security, *when is that sufficiency to be judged of?* It must be at one of three periods; either when the security was taken—when the note fell due—or when the indorser was called upon for payment. In this case these two last periods were the same, for the indorsers had the earliest notice to which they were entitled, viz: the day after the maturity of the note. I think I have already established that the first is the correct period at which to judge of the sufficiency of the security; but whichever of the three it may be, the testimony offered was clearly inadmissible, because wholly irrelevant to the fact to be proved. The testimony offered was of the inadequacy of the security in November 1839, and the security was taken in 1837, and the note fell due in March 1839. The value of property is liable to rapid and extensive fluctuations. What would be good security in 1837 or 1839, might be none in 1840.

*Per curiam.*

The plaintiff in error was an accommodation indorser of R. Bledsoe, on the note sued on by the defendant in error. It appears that Watt, Burke & Co. had indorsed several notes for Bledsoe's accommodation, previous to the 18th September, 1837, and that on that day they took a mortgage from Bledsoe and wife, to secure them for their several indorsements, including the present case; that on the 31st May, 1838, Watt, Burke & Co. acknowledged satisfaction for a very large amount of Bledsoe's indebtedness, and released a considerable proportion of the mortgaged property. The note sued on was presented for payment on the fourth, and not on the third day of grace—but notice appears to have been given on the proper day for giving notice to the indorser.

The defendant, however, admitting that the demand and notice was not regular, relies on the indemnity which the indorser received before the note fell due. The plaintiff insists that on a foreclosure of their mortgage, which had taken place, they had not funds enough to indemnify them against this demand, and offered evidence of that fact, viz: a copy of the record of foreclosure, &c.

Watt *v.* Mary A. Mitchell.

which was objected to, and the objection sustained in the court below, and this writ of error is brought to reverse that decision.

We are of opinion that this evidence was properly ruled out. The question is, whether an indorser, who obtains indemnity for his indorsement from his principal, does not thereby dispense with notice of demand and refusal to pay. We think he does; and especially under the circumstances of this case. Here the indorsers obtained a formal mortgage of a very large amount of property, and had the same recorded, as an indemnity against their several undertakings and liabilties; and that they actually, of their own accord, released to their principal a large portion of the mortgaged estate, without any agency or consent of the holder of this note; and, if the property remaining in their hands proved insufficient to indemnify them, it was their own fault, and not binding on the holder of the paper.

Referring to the brief of counsel for the argument on each side of the case, and the authorities, the judgment of the court below must be affirmed.